RODRIQUEZ L. ARNOLD,[1]

        Petitioner,

vs.                        Case No. 3:13-cv-1132-J-39JRK

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

**ORDER**

**I.  INTRODUCTION**

Petitioner Rodriquez L. Arnold challenges a 2008 Suwannee County conviction for attempted second degree murder with a firearm, shooting into an occupied motor vehicle, and possession of a firearm by a convicted felon. He initiated this case by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1) on September 9, 2013, pursuant to the mailbox rule. The Court found that he failed to complete the habeas corpus petition form, including failing to respond to all of the questions on the form that the Court is required to review. Order (Doc. 3). The Court directed Petitioner to file an amended petition. Id. Petitioner filed his Amended

---

[1] The Clerk of the Court shall correct Petitioner's name on the docket. The Court notes that in the state court record, Petitioner is referred to as Rodriguez Arnold, and the Court will do the same when referring to the state court record.

Petition (Doc. 5) pursuant to the mailbox rule on September 24, 2013.

In the Amended Petition, Petitioner raises nine claims for habeas relief. Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 26) with supporting Exhibits.[2] Petitioner filed a Reply to Respondents' Answer Brief (Reply) (Doc. 29). See Order (Doc. 8). He filed appendices on February 8, 2018 (Doc. 35), pursuant to the mailbox rule.[3]

## II.  CLAIMS OF PETITION

Petitioner seeks habeas relief on nine grounds:  (1) ineffective assistance of counsel for failure to argue in support of a motion for a judgment of acquittal that the state failed to present any competent substantial evidence to establish that Petitioner was in fact the person who discharged a firearm into the vehicle and/or the body of the victim; (2) ineffective assistance of counsel for failure to effectively cross examine Jeff Foggy, the state's firearms and ballistics expert, and/or call him for the purpose of impeachment; (3) ineffective assistance of counsel for failure to move to conduct an adequate investigation into the

---

[2] The Court hereinafter refers to the Exhibits as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the particular document will be referenced.  The Court will reference the page numbers assigned by the electronic docketing system where applicable.

[3] The Court will refer to the appendices as "App."

shooting; (4) ineffective assistance of counsel for failure to object to the state's discovery violation and/or move for a continuance based on the state's discovery violation; (5) ineffective assistance of counsel for failure to secure the assistance of qualified private forensic experts and/or investigators to assist in the defense investigation and preparations for trial, and/or to testify; (6) ineffective assistance of counsel for failure to effectively cross examine, confront and/or impeach one or more state's witnesses; (7) ineffective assistance of counsel for failure to object to the state's closing argument and move for mistrial on the ground of impermissible burden shifting and/or other improprieties; (8) ineffective assistance of counsel for failure to request that the jury be informed that it could have a witnesses' testimony read back in response to the second jury question; and (9) ineffective assistance of counsel for failure to adequately prepare witness Stephanie Brown Arnold for trial.

The Court will address the nine grounds raised in the Amended Petition, see Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992). Respondents urge this Court to deny habeas relief. Response at 72. It is Petitioner's burden to establish the need for a federal evidentiary hearing. Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011), cert. denied, 565 U.S. 1120 (2012). A district court is not required to hold an evidentiary

hearing if the record refutes the asserted factual allegations or otherwise precludes habeas relief.[4] <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007). In this case, the pertinent facts are fully developed in the record before the Court. As a result, this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004), and no further evidentiary proceedings are required in this Court.

### III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> 28 U.S.C. § 2254; <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 1432 (2017). "AEDPA limits the scope of federal habeas review of state court judgments[.]" <u>Pittman v. Sec'y, Fla. Dep't of Corr.</u>, 871 F.3d 1231, 1243 (11th Cir. 2017). As such, AEDPA ensures that federal habeas relief is limited to extreme malfunctions, and not used as a means to attempt to correct state

---

[4] It is important to note that Petitioner received a post conviction evidentiary hearing in the trial court on claims of ineffective assistance of counsel. After the filing of his post conviction motion, the trial court appointed counsel and set the case for a status conference. Ex. 31. The record shows that the court appointed the Office of Regional Conflict Counsel to represent Petitioner. <u>Id</u>. at 2. Appointed counsel, John Broling, represented Petitioner in the evidentiary proceeding which took place on September 4, 2012. Ex. 32, Hearing on Post Conviction Motion.

court errors.  <u>Ledford</u>, 818 F.3d at 642 (quoting <u>Greene v. Fisher</u>, 132 S.Ct. 38, 43 (2011)).

The parameters of review are as follows:

> Thus, under AEDPA, a person in custody pursuant to the judgment of a state court shall not be granted habeas relief on a claim "that was adjudicated on the merits in State court proceedings" unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court—not Supreme Court dicta, nor the opinions of this Court." <u>Taylor v. Sec'y, Fla. Dep't of Corr.</u>, 760 F.3d 1284, 1293-94 (11th Cir. 2014).

> As for the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Terry Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the "unreasonable application" clause, a federal habeas court may "grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts." <u>Id</u>. at 413, 120 S.Ct. 1495. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" <u>Wiggins v. Smith</u>, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting <u>Lockyer v. Andrade</u>, 538 U.S. 63, 76, 123 S.Ct. 1166,

- 5 -

155 L.Ed.2d 144 (2003)). And "an 'unreasonable application of' [Supreme Court] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." <u>Woods v. Donald</u>, --- U.S. ----, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (per curiam) (quotation omitted). To overcome this substantial hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington v. Richter</u>, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). This is "meant to be" a difficult standard to meet. <u>Id</u>. at 102, 131 S.Ct. 770.

<u>Pittman</u>, 871 F.3d at 1243-44.

There is a presumption of correctness of state court's factual findings, unless the presumption is rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The standard of proof is demanding, requiring that a claim be highly probable. <u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1258 (11th Cir. 2013), <u>cert</u>. <u>denied</u>, 135 S.Ct. 67 (2014). Also, the trial court's determination will not be superseded if reasonable minds might disagree about the factual finding. <u>Brumfield v. Cain</u>, 135 S.Ct. 2269, 2277 (2015). Also of note, "[t]his presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." <u>Pope v. Sec'y for Dep't of Corr.</u>, 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003)), <u>cert</u>. <u>denied</u>, 568 U.S. 1233 (2013).

In applying AEDPA deference, the first step is to identify the last state court decision that evaluated the claim on its merits.

Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016).[5] Once identified, the Court reviews the state court's decision, "not necessarily its rationale." Pittman, 871 F.3d at 1244 (quoting Parker v. Sec'y for Dep't of Corr., 331 F.3d 764, 785 (11th Cir. 2003) (citation omitted)).

Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the last adjudication on the merits is unaccompanied by an explanation, the petitioner must demonstrate there was no reasonable basis for the state court to deny relief. Id. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded

---

[5] As suggested by the Eleventh Circuit in Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017), cert. denied, 2018 WL 491544 (U.S. Jan. 22, 2018), in order to avoid any complications if the United States Supreme Court decides to overturn Eleventh Circuit precedent as pronounced in Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227 (11th Cir. 2016) (en banc), cert. granted, 137 S.Ct. 1203 (2017), this Court, will employ "the more state-trial-court focused approach in applying § 2254(d)[,]" where applicable.

jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." Richter, 562 U.S. at 102; Marshall, 828 F.3d at 1285.

Although the § 2254(d) standard is difficult to meet, it was meant to be difficult. Rimmer v. Sec'y, Fla. Dep't of Corr., 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error). Indeed, in order to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

## IV. PROCEDURAL HISTORY

Before addressing each ground raised in the Amended Petition, the Court will provide a brief procedural history. Petitioner was charged by amended information with attempted murder in the second degree with a firearm, shooting into an occupied vehicle, and possession of a firearm by a convicted felon. Ex. 2. The state filed a notice of intention to seek sentencing as a habitual felony offender and a notice of Petitioner's qualification as a prison releasee reoffender. Ex. 2; Ex. 3. The court granted Petitioner's motion to sever the possession count. Ex. 4.

The trial on the first two counts commenced on February 13, 2008. Ex. 6. Curiously, the jury returned a verdict of guilty as to count one, the attempted murder in the second degree charge, found Petitioner actually discharged a firearm during the commission of the offense, but also found that the discharge of the firearm did not result in great bodily harm, and also returned a verdict of guilty to the charge of shooting a firearm at, within or into an occupied vehicle, and found the discharge or actual shooting of the firearm during the commission of the offense resulted in great bodily harm.[6] Ex. 7. The trial court entered judgment February 14, 2008. Ex. 8. Petitioner moved for a new trial. Ex. 10.

The trial court conducted the trial on the third count on March 11, 2008. Ex. 11. The jury returned a guilty verdict. Ex. 12. The trial court entered judgment on March 11, 2008. Ex. 13.

---

[6] Although in his Amended Motion for New Trial and Motion for Arrest of Judgment, Ex. 15, Petitioner raised the issue of inconsistent verdicts, he does not raise this claim in his federal case. Indeed, in his Amended Petition he does not assert that these verdicts constituted truly inconsistent verdicts, those in which an acquittal of one negates a necessary element of another. See Brown v. State, 959 So.2d 218, 220 (Fla. 2007) (recognizing the possibility of a wrongful conviction outweighing the rationale permitting inconsistent verdicts in Florida). Generally, in Florida, inconsistent verdicts are allowed because a jury verdict can be due to lenity or compromise. Id. at 220 (citations omitted). In order to have truly inconsistent verdicts on legally interlocking charges, there must be an acquittal on one count which negates a necessary element for conviction of the other count. Dayes v. McNeil, No. 08-22711-CIV, 2010 WL 1796812, at *3 (S.D. Fla. May 3, 2010) (citation and internal quotation omitted).

Petitioner moved for a new trial. Ex. 14. The trial court denied the motion. Ex. 16 at 171.

Petitioner filed an amended motion for new trial and motion for arrest of judgment on counts one and two. Ex. 15. The court denied relief. Ex. 16 at 170. On June 5, 2008, the trial court held a sentencing proceeding. Ex. 17. The court sentenced Petitioner to concurrent sentences of life imprisonment as a prison releasee reoffender, with a twenty-year mandatory minimum term for use of a firearm on count one, fifteen years imprisonment as a prison releasee reoffender on count two, and fifteen years imprisonment with a three-year mandatory minimum term for use of a firearm on count three. Id. at 20-21. The trial court entered judgment and sentence on June 5, 2008. Ex. 18.

Petitioner appealed. Ex. 19. Through counsel, Petitioner filed a Rule 3.800(b)(2) motion challenging the sentence on count one. Ex. 20. The trial court granted the motion, Ex. 21, and the trial court entered an amended judgment and sentence reflecting a thirty-year sentence on count one as a prison releasee reoffender, with a twenty-year minimum mandatory term for use of a firearm. Ex. 22. Through counsel, Petitioner filed an appeal brief. Ex. 23. The state filed an answer brief. Ex. 24. On June 21, 2010, the 1st DCA affirmed per curiam with a written opinion. Ex. 24. The mandate issued on July 7, 2010. Ex. 25. Petitioner sought discretionary review. Ex. 26; Ex. 27; Ex. 28. On November 16,

2010, the Supreme Court of Florida declined to accept jurisdiction and denied the petition for review.  Ex. 29.

On November 15, 2011, pursuant to the mailbox rule, Petitioner filed a Motion for Postconviction Relief (Rule 3.850 motion).  Ex. 30.  The circuit court found an evidentiary hearing required on grounds one and three and appointed the Office of Regional Conflict Counsel to represent Petitioner.  Ex. 31.  On September 4, 2012, the trial court conducted an evidentiary hearing.  Ex. 32, Hearing on Post Conviction Motion.  The trial court denied the Rule 3.850 motion in its Order Denying Motion for Postconviction Relief .  Ex. 32.  Petitioner appealed.  Ex. 33; Ex. 34.  The state filed an answer brief.  Ex. 35.  The 1st DCA, on May 15, 2013, per curiam affirmed.  Ex. 36.  The mandate issued on June 11, 2013.  <u>Id</u>.

Petitioner states that he filed a successive Rule 3.850 motion in the trial court.  App., Successive Motion for Postconviction Relief.  He reports that on January 12, 2018, the state court denied the motion as untimely (outside the two-year window to timely file a Rule 3.850 motion).  <u>See</u> Motion to Reopen Case (Doc. 35).

## V.  TIMELINESS

As noted by Respondents, Petitioner timely filed the original Petition.  Response at 7.  Once the Supreme Court of Florida denied the petition for discretionary review on November 16, 2010, Petitioner had ninety days to petition for certiorari in the United States Supreme Court.  <u>Id</u>. at 5.  He did not seek certiorari.  As

such, the one-year clock began to run on February 14, 2011, and ran
for a period of 273 days.  Id.  The one-year limitation period was
tolled during the pendency of Petitioner's Rule 3.850 motion, from
the date of filing, November 15, 2011, until the mandate issued on
June 11, 2013.  Id. at 6.  On June 12, 2013, the clock began to run
again, and ran out on Thursday, September 12, 2013.  Petitioner
timely filed his original Petition on September 9, 2013.

Grounds one through eight of the Amended Petition relate back
to claims presented in the timely original petition.  See Fed. R.
Civ. P. 15(c)(1)(B).  Ground nine, set forth in the Amended
Petition, does not relate back to any timely filed claim.  See
Mayle v. Felix, 545 U.S. 644, 656-57 (2005) (finding that a habeas
petitioner's amended petition, filed after the one-year federal
habeas limitation period had expired, did not arise out of the same
"conduct, transaction, or occurrence" set forth in his original
timely filed petition, and thus did not "relate back" to the date
of the original petition; the amended petition asserted a new
ground for relief supported by facts that differed in both time and
type from those set forth in the original pleading).  This
additional claim, ground nine, is untimely and does not relate back
to Petitioner's timely-filed claims.

Therefore, ground nine is barred in federal habeas as
untimely.  Petitioner contends that this ground should be accepted
as timely filed because this Court granted Petitioner an extension
of time to file an amended petition "which acts as a stay and does

- 12 -

toll the time [.]" Reply at 32.  <u>See</u> Order (Doc. 3), Emergency
Motion for Extension of Time (Doc. 4), and Order (Doc. 6).  The
Court rejects this contention.  An explanation follows.

The record shows that the one-year period expired immediately
after the filing of the incomplete, original Petition on September
9, 2013.  Although Petitioner moved for an extension of time to
file his amended petition (Doc. 4), the one-year period had already
expired on September 12, 2013.  The Court granted Petitioner's
motion for extension of time and deemed the Amended Petition timely
filed for purposes of its order to amend the petition, but the
Court's Order did not act as a stay of the one-year period because
there was no time left to be tolled as the one-year period expired
on September 12, 2013.  <u>See</u> <u>e.g.</u>, <u>Webster v. Moore</u>, 199 F.3d 1256,
1259 (11th Cir.) (per curiam) ("Under § 2244(d)(2), even 'properly
filed' state-court petitions must be 'pending' in order to toll the
limitations period.  A state-court petition like [Petitioner]'s
that is filed following the expiration of the limitations period
cannot toll that period because there is no period remaining to be
tolled."), <u>cert</u>. <u>denied</u>, 531 U.S. 991 (2000).  Moreover, the time
in which a federal habeas petition is pending does not toll the
one-year limitation period.  <u>See</u> <u>Duncan v. Walker</u>, 533 U.S. 167
(2001) (holding that an application for federal habeas corpus
review <u>does</u> <u>not</u> toll the one-year limitation period under §
2244(d)(2)).

As such, Petitioner's filings in this Court after the filing of the original Petition did not operate to toll the limitation period. They were filed following the expiration of the limitation period. Based on the record before the Court, Petitioner has not presented any justifiable reason why the dictates of the one-year limitation period should not be imposed upon him with regard to ground nine. Petitioner has failed to show an extraordinary circumstance, and he has not met the burden of showing that equitable tolling is warranted.[7] Additionally, Petitioner had ample time to exhaust state remedies and prepare and file a federal petition. Therefore, the Court dismisses ground nine with prejudice pursuant to 28 U.S.C. § 2244(d).[8]

## VI. EXHAUSTION AND PROCEDURAL DEFAULT

Petitioner's procedural hurdles are not at an end. Petitioner failed to exhaust grounds one through eight of the Amended Petition in the state courts. He concedes that he did not do so, but asks that he be allowed to present these claims because he was financially unable to secure the services of an attorney to assist

---

[7] In order to be entitled to equitable tolling a petitioner is required to demonstrate two criteria: (1) the diligent pursuit of his rights and (2) some extraordinary circumstance that stood in his way and that prevented timely filing. <u>Agnew v. Florida</u>, No. 16-14451, 2017 WL 962489, at *5 (S.D. Fla. Feb. 1, 2017), <u>report and recommendation adopted by</u> No. 16-14451, 2017 WL 962486 (S.D. Fla. Feb. 22, 2017). It is the petitioner's burden of persuasion, and Petitioner has not met this burden.

[8] Petitioner has failed to demonstrate that he has new evidence establishing actual innocence.

him in the investigation, research, preparation, and prosecution of his state post conviction claims.[9] Amended Petition at 10, 14, 17, 20, 24, 28-29, 35, 37-38.

In addressing the question of exhaustion, this Court must ask whether Petitioner's claims were fairly raised in the state court proceedings:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. See 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in Baldwin "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"—namely, giving the state courts "a meaningful opportunity" to address the federal claim. McNair, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state-law claim." Kelley, 377 F.3d at 1343–44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts

---

[9] Petitioner, in his original Petition, stated he was relying on Martinez v. Ryan, 566 U.S. 1 (2012) and Trevino v. Thaler, 569 U.S. 413 (2013), as providing the basis to excuse his procedural default. Petition at 6-7.

bearing upon (his) [federal] constitutional claim." Id. at 1344 (quotation omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir. 2012), cert. denied, 568 U.S. 1104 (2013). Of course, in this instance, the claims were not fairly raised in the state court proceedings.

The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, supra, at 747–748, 111 S.Ct. 2546; Sykes, supra, at 84-85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S.Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. ----, ----, 130 S.Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S.Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012).

In _Martinez_, the Supreme Court expanded the "cause" that may excuse a procedural default. _Id_. at 9. The Supreme Court explained:

> Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an [ineffective assistance of trial counsel] claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of _Strickland v. Washington_, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying [ineffective assistance of trial counsel] claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. _Cf_. _Miller-El v. Cockrell_, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue).

_Martinez v. Ryan_, 566 U.S. at 14.

Respondents assert that grounds one through eight of the Amended Petition are unexhausted and procedurally defaulted and must be denied as such. Response at 20. After giving due

consideration to this assertion, the Court finds that grounds one through eight are unexhausted because Petitioner failed to fairly raise these claims in the state court system, thus the trial court never considered the merits of these claims.

Procedural defaults may be excused under certain circumstances; "[a] petitioner who fails to exhaust his claim is procedurally barred from pursuing that claim on habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default." <u>Lucas</u>, 682 F.3d at 1353 (citing <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1306 (11th Cir. 1999) (per curiam)). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." <u>Johnson v. Ala.</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002).

Petitioner did not fairly and/or properly present these federal constitutional claims to the state courts. Any further attempts to seek post conviction relief in the state courts on these grounds will be unavailing. As such, he has procedurally defaulted grounds one through eight claiming ineffective assistance of counsel.

In the Reply, Petitioner contends that this procedural default should be excused because he meets the narrow exception under <u>Martinez</u>. Reply at 3. Petitioner is apparently blaming the lack

of counsel at the inception of his post conviction proceeding for his failure to raise the eight grounds in his Rule 3.850 motion. Amended Petition at 10. Petitioner urges this Court to find that the narrow exception provided for in <u>Martinez</u> is applicable to his situation because he asked post conviction counsel to supplement the Rule 3.850 motion, but counsel did not do so. Reply at 5.

Upon review of the record, Petitioner may not have had representation at the inception of his post conviction proceeding, but he was represented by John Broling, Criminal Conflict Counsel. Ex. 32, Hearing on Post Conviction Motion. The trial court granted an evidentiary hearing on two grounds of ineffective assistance of counsel and appointed counsel.

Petitioner has not demonstrated that Mr. Broling's performance as post conviction counsel amounted to ineffective assistance of counsel. <u>See</u> <u>Martinez v. Ryan</u>, 566 U.S. at 17 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.").

Since Petitioner had counsel in his post conviction proceeding, this Court's inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland v.</u>

Washington, 466 U.S. 688, 690 (1984). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). The standard is reasonably effective counsel, not the perfect assistance of counsel. Petitioner has failed to show that Mr. Broling's representation as post conviction counsel fell below an objective standard of reasonableness. Petitioner has also failed to show that there was a reasonable probability that the results of the post conviction proceeding would have been different but for the actions and/or omissions of his counsel.

This Court finds that grounds one through eight are unexhausted and procedurally defaulted. Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach the merits of these claims. Although Petitioner claims that his procedural default should be excused, relying on Martinez, Petitioner has failed to show that he falls within the narrow parameters of the ruling in Martinez, which recognized a narrow exception for ineffective assistance of counsel at initial-review collateral proceedings. As such, Petitioner has failed to establish cause for the procedural default of his claim of ineffective assistance of trial counsel raised in grounds one through eight of the Petition.

Petitioner, in his Reply, asserts that this procedural default should be excused because he was not appointed counsel at the

inception of his post conviction proceedings and his appointed counsel did not supplement the post conviction motion, thereby deducing that the lack of counsel at the inception of the process amounts to no post conviction counsel.  Although the Court is not convinced that Petitioner did not have counsel for his post conviction proceeding, assuming arguendo Petitioner was without post conviction counsel for part of the process and that amounts to the deprivation of counsel as contemplated by <u>Martinez</u>, to overcome the procedural default, Petitioner must also demonstrate that the underlying ineffectiveness claims are substantial.[10]  More specifically, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." <u>Martinez</u>, 566 U.S. at 14 (citation omitted).

## VII.  Underlying Ineffectiveness Claims

### A.  Ground One

Petitioner has failed to demonstrate that the underlying ineffective assistance claims are substantial ones.  In his first ground, he claims his trial counsel was ineffective for failure to argue in support of a motion for a judgment of acquittal that the state failed to present any competent substantial evidence to

---

[10] Respondents presume, for purposes of this habeas proceeding, that Petitioner was not represented by counsel in the post conviction process as contemplated by <u>Martinez</u>, and address the grounds accordingly.  Response at 21 n.3.

establish that Petitioner was in fact the person who discharged a firearm into the vehicle and/or the body of the victim. Amended Petition at 5. The Court is not convinced that this ground has some merit.

The Due Process Clause of the Fourteenth Amendment requires the state to prove beyond a reasonable doubt each element of the offense charged. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997)(citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)), cert. denied, 522 U.S. 1125 (1998). "[T]his court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)). The relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. Thompson, 118 F.3d at 1448.

The trial court instructed the jury that if it found Petitioner guilty of attempted murder in the second degree, the jury also had to determine whether the state had proved beyond a reasonable doubt Petitioner "actually discharged a firearm" during the course of committing the offense and whether as a result of discharging the firearm, Petitioner caused the victim great bodily harm. Ex. 6 at 388. As to the second count, shooting into an occupied vehicle, the trial court instructed the jury that the state must prove beyond a reasonable doubt that Petitioner

discharged a firearm, he did so at, within or into a vehicle that was being used or occupied by any person, and the act was done wantonly or maliciously. Id. at 388-89.

The records shows that the jury returned a verdict finding Petitioner guilty of attempted murder in the second degree, and specifically finding that Petitioner actually discharged a firearm during the commission of the offense. Ex. 7 at 75. The jury also found Petitioner guilty of shooting at, within or into an occupied vehicle, and the discharge or actual shooting of a firearm during the offense resulted in great bodily harm to the victim. Id. at 76.

The trial record demonstrates that the victim, Anthony L. Brown, Sr., who survived the shooting, testified at trial. He initially testified that he was in his vehicle when Petitioner approached the passenger side and addressed confrontational and derogatory statements to Mr. Brown. Ex. 6 at 36. Mr. Brown testified that Petitioner began moving around the car. Id. at 37. Mr. Brown said gunfire came right in his car window, and a bullet hit his wedding band finger. Id. at 38. He described the shots coming into the vehicle:

> So first shot and then another shot right into
> the window and that's when I leaned over in
> the car.  Then it was just gunfire, just
> gunfire all around the car.  And I looked up
> and still see gunfire, see him running back
> and forth, back and forth.

Id.

Mr. Brown testified that after twelve to fourteen shots, he drove away in reverse. Id. at 39. He said that Petitioner was telling Mr. Brown to die. Id. The prosecutor asked:

> Q    And do you have any doubt whether he was holding a gun or not?
>
> A    No, sir, I don't.
>
> Q    No doubt that was the man there who was shooting?
>
> A    No doubt, no doubt at all.

Id.

The record also demonstrates that Petitioner took the stand and admitted that he shot the victim; however, he claimed he did so in self defense. Id. at 319. Petitioner testified he shot at the victim while the victim was in the vehicle: "[h]e got back in his car and went to backing up. And he as he was backing up, he had his arm out the window and shooting. I shot maybe three more times." Id. at 324.

Although Petitioner references the conflicting testimony at trial, "[w]hen the record reflects facts that support conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant. In other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence." Johnson v. Ala., 256 F.3d at 1172 (citations omitted). As explained by the Supreme Court,

> Jackson requires a reviewing court to review
> the evidence "in the light most favorable to
> the prosecution." 443 U.S., at 319, 99 S.Ct.
> 2781. Expressed more fully, this means a
> reviewing court "faced with a record of
> historical facts that supports conflicting
> inferences must presume—even if it does not
> affirmatively appear in the record—that the
> trier of fact resolved any such conflicts in
> favor of the prosecution, and must defer to
> that resolution." Id., at 326, 99 S.Ct. 2781;
> see also Schlup v. Delo, 513 U.S. 298, 330,
> 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) ("The
> Jackson standard ... looks to whether there is
> sufficient evidence which, if credited, could
> support the conviction").

McDaniel v. Brown, 558 U.S. 120, 133 (2010) (per curiam).

At the close of the state's case, defense counsel moved for a judgment of acquittal on counts one and two. Ex. 6 at 262. He argued that there had been a failure to show intent to murder and "intent that he had a depraved mind." Id. He continued:

> Same thing with the shooting into the
> vehicle. **Obviously there was shooting into a
> vehicle and there was testified [sic] my
> client was shooting into the vehicle**, but
> there is nothing as to the intent element of
> wantonly and recklessly shooting into that
> vehicle.

Id. (emphasis added).

The prosecutor responded:

> State has provided –– presented a prima
> facie case and the evidence does show the
> defendant shot the vehicle and evidence
> testified that he was the one firing the gun
> and wantonly and maliciously and don't have to
> prove intent to kill.

Id. at 262-63.

- 25 -

The court denied the motion finding, based on the evidence in the light most favorable to the state, the state had made a prima facie case. Id. at 263. When defense counsel renewed his motion for judgment of acquittal, making the same argument but also relying on additional testimony regarding justifiable actions of self defense, the trial court denied the motion finding the state had made a prima facie case. Id. at 339.

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Petitioner committed the offense of attempted murder in the second degree and the defendant actually discharged a firearm during the commission of the offense, and committed the offense of shooting a firearm at, within or into an occupied vehicle and the defendant's actual discharge or actual shooting of a firearm during the commission of the offense resulted in great bodily harm. Here, the testimony of the victim was sufficient to sustain the conviction. Moreover, Petitioner testified that he shot the victim and he shot at the victim while the victim was in the vehicle.

Based on the testimony in the light most favorable to the prosecution, Petitioner discharged a firearm, he shot the victim, and he shot into the vehicle occupied by the victim. Trial counsel cannot be found to be ineffective for failing to raise a meritless argument. Diaz v. Sec'y, Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir.), cert. denied, 546 U.S. 1064 (2005). There is no reasonable probability that a motion for judgment of acquittal based on the

ground suggested by Petitioner would have been granted; therefore, Petitioner has not shown prejudice to excuse procedural default. Ground one is due to be denied. It simply does not have some merit.

## B. Ground Two

In his second ground, Petitioner claims his trial counsel was ineffective for failure to effectively cross examine Jeff Foggy, the state's firearms and ballistics expert, and/or call him for the purpose of impeachment. Amended Petition at 10. The Court is not convinced that this ground has some merit.

The trial record shows the prosecutor called Jeff Foggy, an employee of the firearms section of the Florida Department of Law Enforcement, to testify as an expert in firearms, ballistics and firearms identification. Ex. 6 at 221-23. Providing his qualifications, Mr. Foggy testified that he examines ammunition components to determine if they have been fired from or within a particular firearm. Id. at 223. He said he does serial number restoration, distance determination, and conducts tool mark examinations. Id. He testified that he looked at the ammunition to determine if "they were fired from the same firearm." Id. at 258. He determined that all thirteen cartridge cases were fired in the same firearm. Id. at 259. With regard to the projectile, he determined it was a nine millimeter (9 mm) caliber and "could list

possible weapons that could have fired it."[11]  Id.  In looking at the projectile, he submitted that the most prominent firearms that could have fired it were "Beretta, Taurus or Intertech."  Id. at 261.  Also, based on his experience, he surmised that these were the most prominent firearms that could have fired the cartridge cases.  Id.  Defense counsel did not cross examine the witness. Id.

Petitioner asserts that his counsel was ineffective for failing to cross examine or call Mr. Foggy as a witness to testify as to "the details of the scientific and/or other principles, techniques, and processes underlying his findings, opinions, and conclusions[.]" Amended Petition at 11.  Petitioner suggests that if counsel had done so, Mr. Foggy's testimony would have revealed inconsistencies and contradictions.  Id.  Petitioner opines that if counsel had effectively cross examined Mr. Foggy or called him as a witness, Mr. Foggy would have had to admit that none of the examined evidence could conclusively be connected to Petitioner. Id.

Significantly, the gun used by Petitioner was never found. Mr. Foggy did not testify that the ammunition came from a particular gun, instead he testified that the cartridges came from the same gun, and the projectile was a 9 mm caliber.

_____

[11] It is important to note that Petitioner testified that he had a 9 mm gun on the day of the shooting, but did not know the brand of the gun.  Ex. 6 at 326.  The record shows that the gun was not found by the police.

Petitioner does not contest that Mr. Foggy was an expert in his field. At trial, Mr. Foggy appropriately provided testimony within his expertise. Petitioner faults his counsel with failing to explore facts and data that supported Mr. Foggy's conclusions. Respondents contend that had counsel done so, most assuredly, it would have served to bolster the expert's testimony, something counsel strategically would want to avoid doing. Response at 33.

It was important for Petitioner's trial counsel to take into consideration the fact that the defense was going to be self defense, and proceed accordingly. The defense made tactical decisions: Petitioner was going to take the stand and admit shooting the victim, shooting into the car, and using a 9 mm weapon. Because Petitioner was not going to deny shooting the victim or into the car, it was not unreasonable for defense counsel to avoid bolstering the expert's testimony by challenging his expertise through cross examination or impeachment.

Even if defense counsel had questioned the substance of the expert's report, the expert's ultimate conclusion would have remained the same as it was appropriately a limited one based on the evidence found.[12] As such, if defense counsel had cross examined Mr. Foggy in the manner in which Petitioner desired or called Mr. Foggy as a defense witness, there is no reasonable

---

[12] Defense counsel had the written report and was fully aware of its contents.

probability that the outcome of the trial would have been different.

Also, in reviewing the record, it is quite apparent that defense counsel decided to use closing argument to challenge Mr. Foggy's conclusion that all of the casings came from the same gun as being unverified or factually unsupported. Ex. 6 at 372. Defense counsel effectively argued the state's case had weaknesses, including the fact that the prosecution neglected to present supporting data and sufficient analysis to justify the expert's conclusions. Consequently, counsel contended that the state failed to prove its case beyond a reasonable doubt:

> Now FDLE would like to tell you that they all came from the same gun. I would have liked to have known how they verified that. The expert gave us no pictures, no diagrams, no -- here is the butt of one shell, here is the butt of the other and, look, they have the same firing pin. How you can check the same firing pin and how many permutations of the firing pin there is. The firing pin is a nine millimeter. You get to take a shell casing back. You get to take them out and play with them. Take them out and compare them. You see whether the evidence in your hand if there is some type of fingerprint where we can tell that they are from the same firing pin.
>
> You are going to be read a jury instruction about experts. They are allowed to give the opinion but they are like -- they are not like any witness in that they are allowed to give an opinion, but they are like any witness they are allowed to believe them or disbelieve them and that is your job as a juror, to weigh what is real, what seems correct to you, what is evidence that can't be contradicted.

<u>Id</u>. at 372-73.

It is very important to recognize, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." <u>Strickland</u>, 466 U.S. at 689-90 (citation omitted). Here, defense counsel elected to attack the asserted deficiency in the state's case in his closing argument, a sound trial strategy. "Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel[.] <u>Id</u>. at 690. This Court will not unduly scrutinize the performance of defense counsel, and finds this was acceptable and reasonable assistance considering the circumstances.

Petitioner has failed to demonstrate that the underlying ineffective assistance claim raised in ground two is a substantial one. Petitioner is not entitled to relief on ground two.

### C.  Ground Three

In his third ground, Petitioner claims his trial counsel was ineffective for failure to conduct an adequate investigation into the shooting. Amended Petition at 14. The Court is not convinced that this ground has some merit.

In ground three, Petitioner is apparently attempting to claim that the police did an inadequate investigation of the scene by failing to find bullet holes in the ground and "expended cases" from Petitioner's gun in the ground. <u>Id</u>. at 15. Petitioner

states: "[a]fter all, they did not have the benefit of Petitioner's knowledge at the time. However, counsel would not have, and never had, that excuse." Id.

The testimony at trial revealed that the shooting took place on the grounds of Petitioner's residence, including the concrete pad and sandy, dirt driveway. Ex. 6 at 95-97, 243. Deputy Steven Matthew Greaves testified that although it was dark, with artificial light, the Suwannee County Sheriff's Office conducted an investigation. Id. at 92-100. He attested that they looked outside for the casings and anything that would have been involved in the shooting. Id. at 97. He said they located casings along the driveway. Id. The officers were there for two to three hours. Id. at 99.

Suwannee County Sheriff's Office investigator Jeff Cameron testified that he too was dispatched to the scene. Id. at 102-103. He testified that he returned to the scene the following morning in the daylight. Id. at 106. He photographed the double wide mobile home and the six foot fence. Id. He further attested that he found four more shell casings lined in the driveway and one projectile. Id. at 107.

Suwannee County Sheriff's Office investigator Chris Fry testified that he was called to the scene as well. Id. at 129-30. Upon being shown photographs of the scene, he testified:

> Yeah, the blue roof there, I believe, is
> Stephanie Brown's residence and that's where
> the shooting took place. There is a driveway

> there. That would be Stephanie Brown's house
> and that's the driveway, the car. I believe
> the shooting took place right around that
> area. The bullet casings that were found were
> from there on out to the road area. I think
> 90 or so feet. The shell casings that were
> found indicating that the shooter would be
> running after the car as it was trying to back
> out. Then the car headed north on 153rd Road,
> which is Mount Olive Road.

Id. at 144. Investigator Fry reiterated that he saw shells on the driveway, "90 feet worth." Id. at 153.

Deputy Ronald Colvin testified that he was also called to the residence. Id. at 166-67. Nine, 9 mm shell casings were found that night. Id. at 173. He photographed the carport, cement slab and driveway. Id. at 167, 171-74. Deputy Joe Rodriguez testified that he was called to the scene and picked up bullet shells. Id. at 236.

Investigator Cameron testified that the day following the shooting he found four shell casings and one projectile or the bullet itself. Id. at 243. He testified that he found these shells in the sandy drive from the road to the house. Id. On cross examination, he said, the night before, the deputies had marked and picked up different exhibits. Id. at 250. The day after the shooting, Deputy Cameron found spent shells in the sandy road bed. Id. Upon inquiry, he stated a spent shell could get stuck in a tire tread. Id. Also upon cross examination, he testified that the whole bullet was found in the sandy road bed. Id.

Petitioner asserts that any reasonable, competent and diligent attorney would have investigated the yard and hired an investigator to search the yard and look for any evidence of bullet holes in the area. Amended Petition at 15. The Court is not convinced that this claim has some merit. Based on the record before the Court, counsel's performance was not deficient for failing to further investigate the yard and hire an investigator to search the yard and the surrounding area for any evidence of ammunition or bullet holes. Immediately after the shooting, the Sheriff's Office sent multiple officers to the scene to look for evidence and to photograph the scene. A diligent and lengthy search ensued. The following day, a Sheriff's Office investigator returned to the scene during daylight hours and conducted an additional search and took more photographs. He successfully found additional evidence in the sand. He did not, however, find any bullet holes in the mobile home or fence.

Again, there are numerous ways to provide effective assistance, and criminal defense attorneys may choose to defend a client in different, but effective ways. The trial record demonstrates that defense counsel made sound strategic decisions in preparing for trial and defended Petitioner well within the range of professional competence. Any failure to undertake a personal search of the yard and surroundings or to hire someone else to do

so was a reasonable strategic choice under the circumstances presented.

In this instance, thorough searches had been conducted and photographs taken. Thus, any decision by counsel not to undertake a further investigation was reasonable and fell within the range of professionally competent assistance, particularly giving a heavy measure of deference to counsel's assessment of the need for a personal investigation or the need to hire an investigator to search the area. See Dobbs v. Turpin, 142 F.3d 1383, 1387-88 (11th Cir. 1998) (citations omitted) (addressing the standard in this circuit for determining whether a lawyer's failure to pursue an investigation amounts to ineffectiveness).

This ineffectiveness claim does not have some merit. Ground three is due to be denied.

### D. Ground Four

In his fourth ground, Petitioner claims his trial counsel was ineffective for failure to object to the state's discovery violation and/or move for a continuance based on the state's discovery violation. Amended Petition at 17. The Court is not convinced that this ground has some merit.

Respondents contend there was no discovery violation. Response at 43. A review of the record is required to address this ground. At trial on February 13, 2008, the state called Alzada Jenkins, the evidence custodian for the Suwannee County Sheriff's

Office. Ex. 6 at 123. On cross examination, defense counsel inquired about the Florida Department of Law Enforcement Lab Report (state's exhibit 5) composed by Jeffrey R. Foggy. Id. at 125, 127. Defense counsel asked Ms. Alzada when she came into possession of the report. Id. at 127. She responded: "[y]esterday."[13] Id.

After her testimony, defense counsel asked to approach the bench. Id. at 128. He asked for a copy of the report. Id. The prosecutor stated that it had been faxed to defense counsel the day before at 4 o'clock. Id. Defense counsel said he received the fax about witness Foggy, but did not receive a copy of the report attached to the notice. Id. The prosecutor responded that the report had been sent separately. Id. The prosecutor gave defense counsel a copy of the report, calling it another copy for defense counsel. Id.

The record reflects that Mr. Foggy was not called to testify until the following day, February 14, 2008. Id. at 221. Thus, defense counsel had a day to become familiar with the report and take any action he perceived necessary in light of the contents of the report.[14] Also, the record reflects that the prosecutor sent defense counsel a copy of the report the same day the prosecutor received it, although defense counsel said he did not receive it.

[13] This would have been the day before the trial started, or February 12, 2008.

[14] In the trial court record, state's exhibit 5 is the "report analyzing the bullet and shells." Ex. 6 at 125.

In response to defense counsel's assertion that he did not receive it, the prosecutor provided defense counsel with a copy of the report. There was no apparent need for a continuance because Mr. Foggy was not called to testify until the following day, giving counsel an opportunity to review the report and make tactical considerations. As such, there was no discovery violation.

Based on the record, defense counsel had the opportunity to review the report and determine a proper course of action in light of its contents. When the state moved the report into evidence (state's exhibit 57), defense counsel had no objection and the court admitted the exhibit without objection. Ex. 6 at 260. Defense counsel elected not to cross examine Mr. Foggy. <u>Id</u>. at 261. As noted previously, defense counsel chose to attack the validity of the report in his closing argument, contending it lacked supporting factual information and presented unverifiable results. <u>Id</u>. at 372.

Ground four does not have some merit and is due to be denied. Habeas relief is not warranted.

### E. Ground Five

In his fifth ground, Petitioner claims he received the ineffective assistance of counsel based on counsel's failure to secure the assistance of qualified private forensic experts and/or investigators to assist in the defense investigation and preparations for trial, and/or to testify. Amended Petition at 21.

After reviewing the submissions to the Court, the Court remains unconvinced that this ground has some merit.

In this ground, Petitioner contends that counsel should have secured the assistance of qualified private forensic experts and/or investigators to examine the crime scene, the car, and the crime scene photographs in order to undertake a scientific review of the trajectories of the bullets. Id. at 21. He opines that such an undertaking would have shown that one or more of his shots came from a low angle, originating near or at ground level, and that a shot or shots were fired from inside the car. Id. He also submits that a review should have been undertaken to determine the make and type of firearms involved. Id. at 22. Again, he asserts that a more extensive search of the yard, driveway and surrounding area should have been conducted. Id. Finally, he claims that a qualified person should have reviewed the victim's medical records to evaluate whether the wounds were entry or exit wounds. Id.

As noted by Respondents, Petitioner previously raised the issue concerning the need for a more extensive search of the surroundings under ground three. The Court previously addressed this issue under ground three and will not re-address it. As for the type of guns involved in the shooting, Petitioner testified that he had a 9 mm gun.[15] Ex. 6 at 326. He claimed the victim shot

---

[15] In the attempted second degree murder trial, Petitioner testified that the victim had a firearm. Ex. 6 at 337. All found shells were 9 mm. Id. at 243. At Petitioner's trial for the

at him with a firearm.  Since no guns were located, any review by a firearms expert would have been limited to the shells  and bullet found at the scene, and the state's expert undertook that review and submitted his report.  At most, it was determined that the firing weapon was a 9 mm caliber gun and there were prominent types of firearms that could have possibly fired the cartridge cases. Id. at 259-61.  Again, no weapons were found; therefore, they could not be tested.[16]

Petitioner asserts that he shot from a low angle at the start of the shootout, and expended cases from Petitioner's gun may have been imbedded in the ground at that location, but Petitioner's own testimony reflects that he was "on the carport on the concrete slab" at the inception of the shooting.  Id. at 323.  Also of note, law enforcement officers found cartridges along the lengthy driveway, supporting their contention, and consistent with the victim's testimony, that Petitioner moved down the driveway during the course of the shooting.  Id. at 144, 153.

---

charge of possession of a firearm by a convicted felon, Petitioner testified that both he and the victim had 9 mm guns.  Ex. 11 at 65.

[16] At Petitioner's trial for the charge of possession of a firearm by a convicted felon, he testified he got rid of his gun after the shooting and could not remember where he put it.  Ex. 11 at 68.  Petitioner admitted having the gun during the incident, and if anyone had knowledge of the gun's location in order to make it available for testing, it would have been Petitioner.

There was ample testimony and argument presented concerning the possible trajectory of the bullets, but it was quite telling that no shell casings, ammunition or weapons were found in the victim's vehicle or along the roadway.[17]  Id. at 105, 108-109. Although Petitioner claims counsel's performance was deficient because counsel failed to hire an expert to try and show the bullet lodged in the dash was fired from inside of the car, there was simply no supporting physical evidence that shots were fired from inside the vehicle.  Id.  All of the bullet holes were described as going into the car.  Id. at 132, 141.  More importantly, there was no physical evidence that showed the victim had a firearm or ammunition in the vehicle.[18]  Id. at 108, 163.

Finally, Petitioner's contends that his counsel was ineffective for failing to hire a qualified person to review the victim's medical records to evaluate whether the wounds were entry or exit wounds.  The record shows the following.  The state called Dr. Patrick Lee Agdamad, M.D.  When asked whether the leg wound was an entrance or exit wound, Dr. Agdamad testified that it was most likely an entrance wound.  Ex. 6 at 210.  He explained that generally exit wounds are larger and create more of an astelic

---

[17] The victim testified that he drove from the scene and called his wife and then dialed 911.  Ex. 6 at 39-40.

[18] Of import, the defense did put on some testimonial evidence that shots or flashes were apparently coming from inside the victim's vehicle as it was backing out.  Ex. 6 at 276-77, 278.

[sic] pattern, but a physician specializing in forensic medicine could address the issue more specifically. _Id_. On cross, he explained: "[i]t is pretty round circumferential which would indicate it is possibly an entrance wound." _Id_. at 211-12. He said it was located at the back of the leg. _Id_. at 212. With regard to additional photographs, he opined that one wound was an exit wound and one was an entrance wound, but not with 100 percent certainty. _Id_. at 212-13. He said it was possible that the wound with the bigger hole was an exit wound. _Id_. at 213.

Defense counsel, Walter Flinn, in closing, argued that the physical evidence matched Petitioner's testimony and contradicted the victim's testimony. Ex. 6 at 366-67. Mr. Flinn referenced the doctor's testimony about the back of the victim's leg and the wounds. _Id_. Mr. Flinn argued that the evidence supports "conclusively [the victim] got shot outside the car." _Id_. at 368. Mr. Flinn reminded the jury that Petitioner testified to two incidents of multiple shots. _Id_. at 369. Finally, Mr. Flinn asserted that the victim lied about what happened that night, as the evidence and photographs did not support his testimony. _Id_. at 370-71.

"Which witnesses, if any, to call . . . is the epitome of a strategic decision, and it is one that [a court] will seldom, if ever, second guess." _Waters v. Thomas_, 46 F.3d 1506, 1512 (11th Cir. 1995), _cert_. _denied_, 516 U.S. 856 (1995). In order to

demonstrate ineffectiveness, the decision must be so patently
unreasonable that no competent attorney would have chosen that
path. Dingle v. Sec'y for the Dep't of Corr. 480 F.3d 1092, 1099
(11th Cir. 2007) (quotation omitted), cert. denied, 552 U.S. 990
(2007). Here, defense counsel chose to cross examine the state's
witness, Dr. Agdamad. However, the defense put on witnesses,
including Petitioner.

In this instance, Petitioner has not demonstrated that Mr.
Flinn's decision not to call a doctor or forensic expert was an
unreasonable strategic move that no competent counsel would have
taken. The underlying ineffective assistance of counsel claim is
not a substantial one.

Ground five does not have some merit. As such, it is due to
be denied.

## F. Ground Six

In his sixth ground, Petitioner claims he received the
ineffective assistance of counsel due to counsel's failure to
effectively cross examine, confront and/or impeach one or more
state's witnesses. Amended Petition at 24. Upon review, the Court
is not convinced that this ground has some merit. Indeed, the
underlying ineffective assistance of counsel claim is not
substantial.

Apparently, Petitioner contends that there was some failure to
put on sufficient evidence to demonstrate a reasonable evidentiary

basis to support the affirmative defense of self defense.  _Id_. at

24.  Based on the record, there was sufficient evidence put forth

as the trial court instructed the jury on self defense.  The court

charged:

> Now, an issue in this case is whether the
> defendant acted in self defense.  It is a
> defense to the offense with which Rodriguez
> Arnold is charged if the injury to Anthony L.
> Brown resulted from the justifiable use of
> deadly force.

Ex. 6 at 389-90.

In ground six, Petitioner contends that defense counsel should

have asked whether the victim, Anthony Brown, owned a gun or had

access to any gun and the type of gun.  Amended Petition at 25.

Petitioner claimed the same questions should have been asked of

Erica Brown.  _Id_.  In support of this ground, Petitioner suggests

that perhaps the victim had access to a gun that did not eject

shell casings, explaining the absence of finding the same, or the

victim had some type of antique firearm that did not require

cartridges.  _Id_.

Significantly, at Petitioner's trial for the charge of

possession of a firearm by a convicted felon, Petitioner testified

that both he and the victim had 9 mm guns during the incident.  Ex.

11 at 65.  Petitioner also testified that Mr. Brown's shell casings

were found on the ground as well.  _Id_. at 64.  Petitioner testified

under oath.  _Id_. at 58.

As a consequence, it would have been fruitless for defense counsel to explore or suggest that the victim had some type of gun that did not eject shell casings or possessed some type of antique firearm that did not require cartridges since the Petitioner testified that the victim possessed a 9 mm gun on May 9, 2007, the date of the shooting, and shell casings from that gun were found by law enforcement at the scene. Also of import, it would have been fruitless to inquire of law enforcement officers as to the types of firearms that would not have left expended cartridge cases, since Petitioner said Anthony Brown had a 9 mm gun, and it left expended cartridges.

At the attempted second degree murder trial, the victim, Anthony Brown, testified he did not have a gun on him or in his car. Ex. 6 at 37. He testified that he did not shoot at Petitioner. Id. at 43. Mr. Brown said he did not put a gun in his lap or get out of the car with a gun. Id. at 43-44. He testified he did not shoot at Petitioner while pulling out. Id. at 44.

Defense counsel did specifically inquire about Mr. Brown coming over to the Arnold's house with guns in the past. Id. at 48. Mr. Flinn asked whether Mr. Brown brought a gun to Stephanie Arnold's house on April 18th and April 19th, and Mr. Brown denied it. Id. Mr. Flinn inquired as to whether Mr. Brown went over to Stephanie Arnold's house on April 16 with two guns in his

waistband.  Id.  Mr. Brown denied being at the Arnold's house with guns.  Id.

The record shows that Mr. Flinn repeatedly inquired about whether Mr. Brown had threatened Stephanie Arnold or Rodriguez Arnold with guns in the past.  Mr. Flinn asked if, on or about January 1, Mr. Brown threatened Stephanie Arnold at her house.  Id. Mr. Flinn asked Mr. Brown whether, on April 13, he pulled a gun on Stephanie Arnold or Rodriguez Arnold.  Id. at 48-49.  Mr. Brown denied it.  Id. at 49.  He did admit to being a convicted felon. Id.  On direct, Erica Brown testified that her husband did not keep a gun in the car or carry a gun.  Id. at 57.

As noted above, defense counsel asked the relevant questions. Response at 52.  At trial, Anthony Brown and Erica Brown both denied that Anthony Brown had a gun in his car or carried a gun. Anthony Brown denied that he had a gun during the incident and he denied shooting at Petitioner.  The court is not convinced that there is a reasonable probability that had counsel inquired of Anthony Brown or Erica Brown if Anthony Brown ever possessed a gun in the past it would have affected the outcome of the trial.  Of course, when asked by defense counsel, Mr. Brown denied bringing guns over to the Arnold's house in the past.

It is noteworthy that defense counsel called Stephanie Arnold and she testified that Anthony Brown reached under the seat of the car and pulled out a gun and put it on his lap.  Ex. 6 at 292.

- 45 -

Mrs. Arnold testified that Mr. Brown jumped out of the car and pointed the gun at her husband, Rodriguez Arnold. Id. Defense counsel asked whether Mrs. Arnold had seen Anthony Brown with a firearm before May 9, but the court sustained the state's objection. Id. at 294-96. The court did allow Mrs. Arnold's testimony concerning Mr. Brown showing up at the house while both she and her husband were at home. Id. at 296-97. Mrs. Arnold attested that on April 18, Mr. Brown showed up uninvited, with a gun in his waistband. Id. at 297. Mrs. Arnold testified that it happened again on April 19. Id. at 298-99. She explained that Mr. Brown showed up at the house with two guns in his pants. Id. at 300. Finally, Mrs. Arnold testified that Mr. Brown shot at her husband on May 9, 2007, before her husband fired any shots. Id.

Defense counsel also called Petitioner to the stand. Petitioner testified concerning the events of April 18, 2007 and April 19, 2007. Id. at 320-322. He said Mr. Brown pulled his gun out and threatened Petitioner on April 19th. Id. at 321-22. Petitioner also testified that on the date of the shooting, Mr. Brown reached under the seat of the car and retrieved a gun. Id. at 323. Petitioner testified that Mr. Brown shot at him. Id. at 324.

In ground six, Petitioner again complains that there was an inadequate investigation by law enforcement. As previously addressed under ground three, the investigator testified there were

no bullet holes in the house or fence.  This matter need not be re-addressed.

Defense counsel did not fail to effectively represent his client.  With regard to the complained of deficiencies, defense counsel effectively cross examined, confronted and/or impeached the state's witnesses.  Based on all of the above, ground six does not have some merit.  Therefore, ground six is due to be denied.

### G.  Ground Seven

In his seventh ground for relief, Petitioner raises a claim of ineffective assistance of counsel for failure to object to the state's closing argument and move for mistrial on the ground of impermissible burden shifting and/or other improprieties.  Amended Petition at 29.  After due consideration, the Court is not convinced that this ground has some merit.

Petitioner contends that the prosecutor's closing argument focused on Petitioner's failure to contradict the state's evidence, to present physical evidence to support the claim of self defense, and to contradict and/or explain the insignificance or insufficiency of the state's evidence.  Id.  Respondents counter that none of the statements identified by Petitioner, viewed in context, were improper.  Response at 58.

The Court recognizes that attorneys should not make "[i]mproper suggestions, insinuations, or assertions" that are intended to mislead the jury or appeal to passions or prejudices

during closing arguments; <u>United States v. Hope</u>, 608 F. App'x 831, 840 (11th Cir. 2015) (per curiam), but the prosecutor is entitled to offer the jury his view of the evidence presented.  With regard to the majority of the comments at issue, that is exactly what the prosecutor did; he argued that he had proved the elements of the two offenses, and contrarily, Petitioner failed to present sufficient evidence to support his affirmative defense of self defense.  In closing, the prosecutor asked the jury to draw all logical inferences from the evidence presented at trial.

There is no reasonable probability that the outcome of the proceedings would have been different had counsel objected to all of the comments Petitioner's references under ground seven. Attorneys are allowed wide latitude during closing argument as they review the evidence and explicate inferences which may reasonably be drawn from it.  Even if defense counsel had objected, the trial court would not have sustained the objections to the prosecutor's comments concerning the strength of the state's case and comparative weaknesses in the defense's presentation of evidence.

In order to establish a substantial error by counsel for failure to object to prosecutorial misconduct, the prosecutor's "comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a

more severe verdict than it would have otherwise." <u>Walls v. State</u>, 926 So.2d 1156, 1167 (Fla. 2006) (per curiam) (citation omitted). Also, there must be a showing that there was no tactical reason for failure to object. <u>Id</u>. Without a showing of the above, a petitioner fails to demonstrate the requisite prejudice. <u>Id</u>.

In this case, the comments of the prosecutor did not deprive Petitioner of a fair and impartial trial. Also, they were not so inflammatory as to result in a more severe verdict than was demonstrated by the state's evidence. In his closing argument, the prosecutor asked the jury to draw all logical inferences from the evidence presented at trial. Upon review, there was substantial and very strong testimonial and physical evidence presented at trial against Petitioner. Thus, any failure on defense counsel's part to object to the state's closing argument did not contribute significantly to the verdict.

Failure to object during closing argument rarely amounts to ineffective assistance of counsel, particularly if the errors, if any, are insubstantial. Here, at most, there was a questionable comment made by the prosecutor, not objected to by defense counsel: "[y]ou know, if there was evidence that Mr. Brown was shooting at Mr. Rodriguez was defending himself, you wouldn't be here today." Ex. 6 at 381. However, error, if any, was insubstantial.

There was another questionable remark made by the prosecutor during closing argument, when he referenced his personal opinion

concerning great bodily injury to the victim.   Immediately upon giving this remark, the court admonished the prosecutor and instructed him to refrain from stating his personal beliefs.   Id. at 383.   In this instance, there was no need for defense counsel to object because the court acted immediately, without objection.   The prosecutor then said, "I take that back[,]" withdrawing his statement.   Id. at 384.

In conclusion, there is no reasonable probability that had Mr. Flinn objected to the statements of the prosecutor in closing or moved for mistrial, the outcome of the trial would have been different.   Ground seven does not have some merit.   Accordingly, it is due to be denied.

As noted by Respondents, it was proper for the prosecutor to undertake an overall review of the evidence and to explicate those inferences which may be drawn from it.   Response at 58.   Also, as Petitioner took the stand and testified that he shot at the victim in self defense, Petitioner's credibility was at issue, and the prosecutor could appropriately challenge the believability of the Petitioner's testimony and attack the evidence presented to support his contention that he acted in self defense.

In conclusion, there is no reasonable probability that had Mr. Flinn objected to the statements of the prosecutor in closing or moved for mistrial, the outcome of the trial would have been different.   Ground seven does not have some merit.   Accordingly, it is due to be denied.

## H.  Ground Eight

In his eighth ground, Petitioner raises another claim of ineffective assistance of trial counsel.   He claims his counsel was ineffective for failure to request that the jury be informed that

it could have a witnesses' testimony read back in response to the second jury question.  Amended Petition at 35.  This ground does not have some merit and is due to be denied.

During deliberation, the jury had a question: "[r]equest Traci Castle's signed statement."  Ex. 6 at 410.  Petitioner's counsel immediately said: "[n]ot in evidence." Id. at 411.  The prosecutor concurred.  Id.  After some discussion, it was agreed that the court would instruct the jury that it would have to base its verdict on the evidence admitted during the trial, the requested item was not admitted in evidence, and the jury would have to rely on Ms. Castle's in-court testimony.  Id. at 412.  The court provided this response to the jury.  Id.  The jury did not ask for Ms. Castle's in-court testimony to be read back.

Petitioner asserts that his counsel's performance was deficient because Ms. Castle's testimony was more favorable to the defense, and the jury should have been reminded of its content through a read-back.  Although Petitioner would have preferred that the jury be reminded of the content of Ms. Castle's testimony, the jury did not request to hear the testimony.  The jury asked for Ms. Castle's signed statement, a statement not admitted into evidence. Defense counsel's response to that question was not unreasonable, improper, or in some way deficient.  In fact, the court, in its answer to the jury's question, reminded the jury that they had to rely on Ms. Castle's in-court testimony, the very testimony

Petitioner claims was favorable to him.  Defense counsel agreed that the jury should rely on Ms. Castle's in-court testimony.  <u>Id</u>. at 412.

Counsel's performance was not deficient for failing to request that the jury be informed that is could request a read-back.  His response to the jury's question evinces a response of a reasonably competent attorney.  Petitioner received effective representation, and counsel's performance did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair trial.

Ground eight does not have some merit.  Therefore, ground eight is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Amended Petition (Doc. 5) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

3.    The **Clerk of the Court** shall enter judgment accordingly and close this case.

4.    If Petitioner appeals the denial of his Amended Petition, **the Court denies a certificate of appealability**.[19]  Because this

---

[19] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542

Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of March, 2018.

_____
BRIAN J. DAVIS
United States District Judge

sa 2/27
c:
Rodriquez L. Arnold
Counsel of Record

U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.